## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOGUMILA JOCHIM, on behalf of herself and all others similarly situated, <br><br>                Plaintiff, <br><br>     v. <br><br> JEAN MADELINE EDUCATION CENTER OF COSMETOLOGY, INC., d/b/a "THE JEAN MADELINE AVEDA INSTITUTE"; JEAN MADELINE, INC.; and SAMUEL LEHMAN, <br><br>                Defendants. | Civil Action No. 2:13-cv-06564-SD |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES................................................................................ii-iv

Summary of Argument.......................................................................................1

I.  PLAINTIFF HAS PLEADED MORE THAN SUFFICIENT FACTS TO
    STATE A CLAIM FOR UNPAID WAGES UNDER FLSA................................2

    A.  Defendants Have Misinterpreted Twombly With Regard to the
        Requirements for Pleading FLSA Unpaid Wage Claims..........................2

    B.  Plaintiff's Complaint Offers Sufficient Facts Relating to Each of
        Three Elements of a FLSA Minimum Wage Claim and Contains
        More Factual Detail than Numerous Other FLSA Complaints Which
        Have Survived a Challenge Under Twombly...........................................7

        1.  Work Without Payment Element.................................................9

        2.  Engaged in Commerce Element................................................10

        3.  Employer/Employee Relationship Element................................14

II. PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS A WAGE CLAIM
    UNDER PENNSYLVANIA STATE LAW...................................................20

III. PLAINTIFF HAS ADEQUATELY PLEADED A CLAIM AGAINST
     INDIVIDUAL DEFENDANT SAMUEL LEHMAN.......................................22

IV. DEFENDANTS' ARGUMENT THAT PLAINTIFF'S COMPLAINT DOES
    NOT ADEQUATELY DISTINGUISH BETWEEN THE TWO CORPORATE
    DEFENDANTS AT THE PLEADING STAGE IS MISPLACED.......................27

V.  DEFENDANTS' REQUEST THAT THE COMPLAINT BE DISMISSED
    "WITH PREJUDICE" IS CONTRARY TO THIRD CIRCUIT LAW AND
    WITHOUT MERIT.............................................................................30

Conclusion...................................................................................................31

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

Arriaga-Zacarias v. Lewis Taylor Farms, Inc., 2008 U.S. Dist. LEXIS 98064
(M.D. Ga. Dec. 4, 2008)..............................................................................6

Bell Atlantic v. Twombly, 550 U.S. 544 (2007).................1, 2, 3, 4, 6, 7, 8, 15, 20, 23, 24, 28

Burroughs v. MGC Servs., 2009 U.S. Dist. LEXIS 29700
(W.D. Pa. Apr. 7, 2009)....................................................................20, 24, 25, 27

Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005)...................................7

Dist. Council 47, AFSCME v. Bradley, 795 F.2d 310, 316 (3d Cir. Pa. 1986)....................30

Dole v. Solid Waste Servs., Inc., 733 F.Supp. 895, 923 (E.D.Pa.1989),
aff'd mem., 897 F.2d 521 (3d Cir.), cert. denied, 497 U.S. 1024 (1990)..........................23

Erickson v. Pardus, 551 U.S. 89, 93 (2007).............................................................3

Falk v. Brennan, 414 U.S. 190, 195 (1973)..........................................................22, 28

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002).................................31

Harris v. Scriptfleet, Inc., 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011)....................4

Lehman v. Legg Mason, Inc., 532 F.Supp.2d 726, 733 (M.D.Pa. 2007)........................28, 29

Luder v. Endicott, 253 F.3d 1020, 1022 (7th Cir. 2001)..............................................23

Marshall v. Brunner, 668 F.2d 748, 751-52 (3d Cir. 1983)...........................................10

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).....................................15

Nicholson v. UTI Worldwide, Inc., 2010 U.S. Dist. LEXIS 138468
(S.D. Ill. Feb. 12, 2010)...........................................................................6, 8

Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)................................3, 30

Premier Pork L.L.C. v. Westin, Inc., 2008 WL 724352 (D.N.J.2008)................................2

Puleo v. SMG Prop. Mgmt., 2008 U.S. Dist. LEXIS 66582 (M.D. Fla. Aug. 20, 2008)............7

Radulescu v. Moldowan, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994)...................................10

Reich v. Circle C. Investments, Inc., 998 F.2d 324, 329 (5th Cir.1993)..............................23

Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6, (1963)..........................15

Ross v. Meagan, 638 F.2d 646, 650 (3d Cir. Pa. 1981)....................................................30

Sanchez v. Haltz Constr., Inc., 2012 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 4, 2012).........2, 5, 23

Scott v. Bimbo Bakeries, Inc., 2012 U.S. Dist. LEXIS 26106 (E.D. Pa. Feb. 29, 2012)........9, 21

Secretary of Labor v. Labbe, 319 Fed. Appx. 761, 2008 U.S. App. LEXIS 22705,
2008 WL 4787133, at *1 (11th Cir. Nov. 4, 2008)...........................................................4

Spears v. Mid-America Waffles, Inc., 2011 U.S. Dist. LEXIS 145014
(D. Kan. Dec. 16, 2011)...........................................................................................5

Tahir v. Avis Budget Group, Inc., 2009 U.S. Dist. LEXIS 115879, 27-28
(D.N.J. Dec. 14, 2009)............................................................................................29

Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 299, n.21, (1985)......14

United States Dept. of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir.1995)..........23

Walker v. Washbasket Wash & Dry, 2001 U.S. Dist. LEXIS 9309, 18-23
(E.D. Pa. July 5, 2001)............................................................................................10

Wirtz v. Washeterias, S.A., 304 F. Supp. 624, 625 (D. Canal Zone 1968)...........................10

Xavier v. Belfor United States Group, Inc., 2009 U.S. Dist. LEXIS 11751
(E.D. La. Feb. 13, 2009)...........................................................................................20

Zegarra v. Marco Polo, Inc., 2009 U.S. Dist. LEXIS 3845, *5 (E.D. Va. Jan. 21, 2009).........22

## STATUTES

                                                                                        Page(s)

29 U.S.C. § 203(d)...............................................................................22, 27

29 U.S.C. §203(g)....................................................................................15

29 U.S.C. §203(g)(e)................................................................................15

29 U.S.C. § 206(a)………………………………………………………..…..8

43 Pa. Cons. Stat. §333.103……………………………………………..…27

Fed.R.Civ.P. 9…………………………………………………………………1

Fed.R.Civ.P. 12(b)(6)………………………………………………………7

FLSA…………………………………………………………………..passim

Pennsylvania Minimum Wage Act, 43 P.S. §333.101 et seq……………20, 21, 22, 24, 27

Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1 et seq…………………20, 21, 31

Rule 12(b)(6)…………………………………………………………………3

## OTHER

Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance & Practice (West 2000)………………………………………………………………22

## Summary of Argument

Defendants' only argument in support of dismissal is Defendants' assertion that Plaintiff has not pleaded her FLSA and Pennsylvania state law wage claims with sufficient factual specificity. In actuality, Defendants are attempting to stretch the holding of <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007) well beyond its breaking point and require Fed.R.Civ.P. 9-type specificity on non-fraud claims.

The case at bar does not involve complicated anti-trust claims or any similarly complex claims. Rather, this case presents a straight-forward claim for unpaid minimum wages under FLSA and Pennsylvania state law. As set forth in the case law cited herein, neither <u>Twombly</u> – nor any other authority – requires the type of factual "hyper-specificity" demanded by Defendants' motion in order to successfully plead FLSA wage claims. The factual allegations in Plaintiff's complaint that she was required by Defendants' to work for 500 hours[1] in defendants' for-profit beauty salon, without any pay at all, are – by themselves – more than enough to satisfy <u>Twombly</u> by giving the defendants fair notice of what her "minimum wage" claim is, and to suggest a right to relief that is well beyond mere speculation. <u>See</u> <u>e.g</u>. Plaintiffs' Complaint at Paragraphs 9, 40-45 and 67.

Plaintiff's complaint, however, does not stop there. Rather, Plaintiff's nineteen-page complaint sets forth in ample detail her rights under FLSA and Pennsylvania law, exactly how those rights were violated and the precise conduct by Defendants which violated those rights. To borrow the wording of post-<u>Twombly</u> cases, Plaintiff's complaint **"presents a story that holds**

---

[1] <u>See</u> Plaintiff's Complaint, Paragraph 67.

1

**together"**[2] and puts Defendants on notice of exactly what Defendants are being accused. If the Court disagrees, Plaintiff will be happy to amend her pleading to provide any additional factual details which the Court deems to be appropriate. Plaintiff submits, however, that this should not be required and that Defendants' motion to dismiss should be denied in its entirety.

## I. PLAINTIFF HAS PLEADED MORE THAN SUFFICIENT FACTS TO STATE A CLAIM FOR UNPAID WAGES UNDER FLSA

Defendants ignore many facts set forth in Plaintiff's complaint, instead choosing to raise "straw man" arguments that are directed at some sort of hypothetical "bare-bones" pleading; something which Plaintiff's complaint clearly is not. Defendants' motion is trying to force a "square peg into a round hole," by demanding a level of heightened factual specificity unknown to FLSA or the federal rules, and by raising arguments which are inapplicable to the fact-laden pleading actually filed by Plaintiff.

### A. Defendants Have Misinterpreted Twombly With Regard to the Requirements for Pleading FLSA Unpaid Wage Claims

Contrary to the impression created by Defendants' motion, the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) expressly declined to impose a

---

[2] See Sanchez v. Haltz Constr., Inc., 2012 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 4, 2012) at *8-9, rejecting an argument by a defendant that Twombly required a plaintiff to plead FLSA claim in great factual detail, holding that the facts needed to make out a plausible claim for a violation of FLSA were not complicated, stating:

> **"we think the defendants are overstating the plaintiffs' pleading burden. _This case, and wage cases generally, are not so complicated that they require significant factual allegations 'to present a story that holds together.'_"** (emphasis added)

See also Premier Pork L.L.C. v. Westin, Inc., 2008 WL 724352 (D.N.J.2008) (Judge Rodriguez) at *6, rejecting a claim that Twombly required factual hyper-specificity on simple contract claims, stating that **_"plausibility requires only that the pleader supply enough details 'to present a story that holds together'"_** (emphasis added)

2

"heightened" pleading standard for non-fraud claims. See Twombly, 550 U.S. at 569, n.14:

> "we *do not apply any 'heightened' pleading standard*, **nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9**, which can only be accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation'" **(emphasis added)**

In Twombly, the Supreme Court explained that to survive a motion to dismiss under Rule 12(b)(6), a complaint "**does not need detailed factual allegations**," and that a plaintiff's obligation is only to provide **"sufficient factual allegations 'to raise a right to relief above the speculative level.'" (emphasis added)** Twombly, 550 U.S at 555. As reiterated by the United States Supreme Court in Erickson v. Pardus, 551 U.S. 89, 93 (2007):

> "**Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" (emphasis added)**

See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008):

> "**In determining how Twombly has changed this standard, we start with what Twombly expressly leaves intact. The Supreme Court reaffirmed that FED.R.CIV.P. 8 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests, and that this standard does not require 'detailed factual allegations.'" (emphasis added)**

As has been recognized by the Third Circuit, as well as other courts, the amount of factual detail needed in a complaint after Twombly will vary depending on the type and complexity of the claim. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008): **"Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case..."** Thus, a complex anti-trust claim will require more factual detail than a

"straightforward" claim such as a FLSA claim for unpaid wages. See Secretary of Labor v. Labbe, 319 Fed. Appx. 761, 2008 U.S. App. LEXIS 22705, 2008 WL 4787133, at *1 (11th Cir. Nov. 4, 2008), holding that to state a FLSA claim, Twombly requires only that the complaint allege a failure to pay the legal wage to covered employees, noting that the reasons for requiring greater factual specificity in complex antitrust cases such as Twombly do not apply to the "quite straightforward" elements of FLSA claims, stating:

> **"In applying these standards to the FLSA claims in this case, we review the Secretary's complaint to determine whether its allegations plausibly indicate that Labbe failed to pay minimum wage and overtime compensation and failed to keep employment records as required by FLSA. _Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward_. The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act. See 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5). There is no need to prove intent or causation that might require more extensive pleading."** (emphasis added)

Indeed, the case law makes abundantly clear that the level of factual detail needed to adequately plead FLSA wage claims is far less than what Defendants' motion argues. See Harris v. Scriptfleet, Inc., 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011) at *7, noting that the factual specificity required by Twombly in pleading a FLSA claim is far less than what is needed in pleading a complicated antitrust case, stating:

> **"Rule 8 of the Federal Rules of Civil Procedure merely requires a 'short and plain statement' to put the defendants on notice. Fed.R.Civ.P. 8(a)(2). To meet this standard, the plaintiffs' claim must be 'plausible on its face' such that the Court may draw a 'reasonable inference' that the defendants are liable. Twombly, 550 U.S. at 556. _Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite simple and straightforward._"** (emphasis added)

4

See also Spears v. Mid-America Waffles, Inc., 2011 U.S. Dist. LEXIS 145014 (D. Kan. Dec. 16, 2011) at *6, rejecting an argument that a FLSA minimum wage claim requires factual hyper-specificity in pleading, stating:

> "**this court does not believe that Twombly requires the specificity that defendants desire. To require such detail would elevate the pleading burden of an FLSA plaintiff above the pleading burden of other plaintiffs. '_The requirements to state a claim of a FLSA violation are quite straightforward'; they require the plaintiff to show 'a failure to pay overtime compensation and/or minimum wages to covered employees'— no more_. Sec'y of Labor v. Labbe, 319 F. App'x 761, 763 (11th Cir. 2008). Rule 8 requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2).**" (emphasis added) (citations omitted)

See also Sanchez v. Haltz Constr., Inc., 2012 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 4, 2012) at *9, rejecting an argument that demanded factual hyper-specificity in pleading a FLSA claim, stating:

> "**The Haltz Defendants contend that the complaint does not contain enough detail to satisfy the pleading standards established in Twombly and Iqbal. Specifically, they point out that plaintiffs fail to allege the number of hours they worked, the days they worked, the total amount of money that they claim is owing, and the type of work they performed. (Defs.' Mem. at 3.) Although the complaint could be clearer on this point, we infer that the plaintiffs performed masonry construction work for the defendants. (See Am. Compl. ¶¶ 36, 43-44.) As to the other omissions, _we think the defendants are overstating the plaintiffs' pleading burden. This case, and wage cases generally, are not so complicated that they require significant factual allegations 'to present a story that holds together.'_ Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010;... Secretary of Labor v. Labbe, 319 Fed. Appx. 761, 763 (11th Cir. 2008) ('Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward.'). Plaintiffs allege that they 'routinely' worked more than 40 hours per week without receiving overtime pay, and that the amount of compensation they did receive for the work they performed fell below the minimum-wage requirement. (Am. Compl. ¶¶ 49-50.) Plaintiffs do not need to provide more factual detail in order to state a claim that is 'plausible' in the relevant sense.**" (emphasis added) (citation omitted)

See also Nicholson v. UTI Worldwide, Inc., 2010 U.S. Dist. LEXIS 138468 (S.D. Ill. Feb. 12, 2010) at *10-11, rejecting the argument that Twombly requires factual hyper-specificity in pleading a relatively simple claim like an FLSA wage claim, stating:

> "**this Court asks itself what rule of law requires Nicholson to allege his unpaid hours worked, the approximate dates he worked off the clock, his hourly wage and facts necessary to calculate damages. It cannot find a rule to answer that question.** While Zhong may be right that a plaintiff should plead his rate of pay and the wages due, no rule requires that he do so. **On the contrary, notice pleading is still alive and well in federal courts, and under that standard a plaintiff need only provide enough details to give the defendant fair notice of the claim and to show that the claim is plausible. Tamayo v. Blagojevich, 526 F.3d 1074, 1082-83 (7th Cir. 2008). *While complex claims like the antitrust claim at issue in Bell Atlantic or claims that rely on proof of knowledge or intent like the civil rights claim at issue in Iqbal may require a fuller set of factual allegations to render them plausible, simple claims do not.* All that is required is enough to give the defendant 'sufficient notice to enable him to begin to investigate and prepare a defense' to a plausible claim.**" (emphasis added) (citations omitted)

See also Arriaga-Zacarias v. Lewis Taylor Farms, Inc., 2008 U.S. Dist. LEXIS 98064 (M.D. Ga. Dec. 4, 2008) at *8, denying a motion to dismiss in a FLSA case where defendants argued for hyper-specificity in pleading a minimum wage claim, stating:

> "**In making this argument, Defendants have misconstrued the Twombly decision.** It is well-established that at the motion to dismiss stage, courts are required to accept the factual allegations in a complaint as true. **Twombly did not abolish this rule** and confer on district judges the authority to dismiss claims based on the improbability of the facts alleged. **See Twombly,** 127 S. Ct. at 1965 (stating that Rule 12(b)(6) does not permit dismissal of a complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable'). **Nor did Twombly abolish the notice pleading standard of the Federal Rules. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). To state a claim for relief under the Federal Rules, a complaint need only contain enough factual allegations that, taken as true, raise a right to relief above the speculative level. Twombly,** 127 S. Ct. at 1965. *The allegations of minimum wage violations for the other pay periods satisfy this standard.* Defendants' Motion to Dismiss Count One is denied." (citation omitted) (emphasis added)

**B. Plaintiff's Complaint Offers Sufficient Facts Relating to Each of Three Elements of a FLSA Minimum Wage Claim and Contains More Factual Detail than Numerous Other FLSA Complaints Which Have Survived a Challenge Under Twombly**

Defendants' motion contains a laundry list of various facts which Defendants contend are "missing" from Plaintiff's complaint. Yet the vast majority of these supposedly "missing" facts <u>do not</u> go to the three elements of a FLSA claim and are thus irrelevant to whether Plaintiff's complaint meets the <u>Twombly</u> standard. <u>Twombly</u> merely requires that a plaintiff plead sufficient facts **relating to the essential elements** of a claim – not every fact a plaintiff knows, or every fact she will rely on to prove her claim, or every fact a defendant can think up while drafting a Fed.R.Civ.P. 12(b)(6) motion – to state a claim that rises above the level of speculation. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 562 (2007), holding that for a complaint to survive it **"must contain either direct or inferential allegations respecting _all the material elements_ necessary to sustain recovery" (emphasis added).** <u>See</u> <u>also</u> <u>Puleo v. SMG Prop. Mgmt.</u>, 2008 U.S. Dist. LEXIS 66582 (M.D. Fla. Aug. 20, 2008) at *3-4, rejecting an argument that demanded hyper-specific factual pleading of FLSA claim, stating:

> **"The Federal Rules of Civil Procedure require every federal pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). '<u>A plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests.</u>' Mann v. Adams Realty Co., Inc., 556 F.2d 288, 293 (5th Cir. 1977). <u>Therefore, in this case, _Puleo is not required to set forth every fact on which he relies in alleging that Xena willfully withheld overtime compensation_</u>." (emphasis added)**

<u>See</u> <u>also</u> <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005):

> "We reemphasize that a complaint need not make a case against a defendant or forecast evidence sufficient to prove an element of the claim. **It need only allege facts sufficient** *to state elements* **of the claim.**" **(emphasis added)**

Clearly, Plaintiff <u>could</u> state additional facts in her complaint, and will be happy to do so if the Court requests. No matter how detailed a complaint may be, it is always possible to add more factual details. That is not the test under <u>Twombly</u>, however. Indeed, in <u>Nicholson v. UTI Worldwide, Inc.</u>, 2010 U.S. Dist. LEXIS 138468 (S.D. Ill. Feb. 12, 2010), the district court issued a very thoughtful opinion addressing the unfortunate tendency of some defendants, after <u>Twombly</u>, to move for dismissal based on the supposed failure to plead a laundry-list of "facts" which are not actual elements of the claim in question. <u>See</u> <u>Nicholson</u>, 2010 U.S.. Dist. LEXIS 138468 at *5-11, rejecting an argument by a defendant in a FLSA case that the plaintiff was required to plead a list of facts which were not actual elements of a FLSA claim, stating:

> "While <u>Bell Atlantic</u>, and <u>Iqbal</u> modified federal pleading requirements, they did not do away with the liberal federal notice pleading standard. <u>Airborne Beepers & Video, Inc. v. AT&T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007). <u>A complaint still need not contain detailed factual allegations</u>, <u>Bell Atlantic</u>, 550 U.S. at 555, and <u>it remains true that *'[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain...' should stop and think: What rule of law requires a complaint to contain that allegation*?'"

> \*          \*          \*

> "*this Court asks itself what rule of law requires Nicholson to allege his unpaid hours worked, the approximate dates he worked off the clock, his hourly wage and facts necessary to calculate damages. It cannot find a rule to answer that question.*" **(emphasis added)**

The FLSA minimum wage provision is set forth at 29 U.S.C. § 206(a) and provides in relevant part: **"Every employer shall pay to each of his employees who in any workweek is**

engaged in commerce . . . wages at the following rates . . . [$7.25 per hour]." As is clear from the statutory text, a FLSA unpaid wage claim has only three elements: 1) that there be an employee/employer relationship; 2) that the employer is "engaged in commerce" within the meaning of FLSA; and 3) that work was performed without payment. See also Scott v. Bimbo Bakeries, Inc., 2012 U.S. Dist. LEXIS 26106 (E.D. Pa. Feb. 29, 2012). Plaintiff's complaint clearly alleges sufficient facts relating to each of these three elements to raise her FLSA claim above the level of mere speculation.

### 1. Work Without Payment Element

Taking the third element of a FLSA wage claim first, Plaintiff's Complaint clearly alleges as a factual matter that Plaintiff worked 500 hours in a for-profit beauty salon run by defendants, without being paid any wages whatsoever. See Plaintiffs' Complaint at Paragraph 9:

> **"9. Plaintiff Bogumila Jochim resides in Philadelphia, Pennsylvania. Like all members of the proposed collective action and class action, Ms. Jochim was, during the relevant time period, a student at defendants' Jean Madeline Aveda Institute in Pennsylvania and _was required by defendants_ to perform numerous hours of labor at one of defendants' for-profit beauty salons in Pennsylvania, without being paid wages." (emphasis added)**

See also Plaintiffs' Complaint at Paragraphs 66-67:

> **"66. The amount of hours of unpaid labor that the collective action/class members performed in defendants' salon personal services business is known to the defendants, who kept detailed contemporaneous records of those hours of work.**
>
> **67. In respect to plaintiff, such hours of work were in excess of 500 hours." (emphasis added)**

9

## 2. Engaged in Commerce Element

The second element of a FLSA wage claim is that the defendant is engaged in commerce within the meaning of FLSA. The term "engaged in commerce" is a term of art under FLSA which has been held to cover virtually any for-profit business which uses goods and services. See Radulescu v. Moldowan, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994) (**"Local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."**); Walker v. Washbasket Wash & Dry, 2001 U.S. Dist. LEXIS 9309, 18-23 (E.D. Pa. July 5, 2001) (coin-operated laundry was "engaged in commerce" for purposes of FLSA); Marshall v. Brunner, 668 F.2d 748, 751-52 (3d Cir. 1983)(trash collecting firm using trucks, truck bodies, tires, batteries, and accessories, sixty-gallon containers, shovels, brooms, oil and gas was an enterprise engaged in commerce); Wirtz v. Washeterias, S.A., 304 F. Supp. 624, 625 (D. Canal Zone 1968) (laundry on a military base using soaps, detergents, bleaches and other goods was an enterprise engaged in commerce). Like the entities found to be "engaged in commerce" in these cases, defendants' "for-profit' beauty salon clearly uses beauty supplies – soap, shampoo, conditioners, nail polish, "perm" supplies, etc. – which move in interstate commerce.[3]

The Complaint contains numerous allegations that Defendants' salon business was a "for-profit" business venture which was engaged in commerce within the meaning of FLSA. The complaint alleges as a factual matter that the salons run by Defendants were not solely for

---

[3] The use of such goods can be inferred from the factual description provided in Plaintiff's complaint of the services provided at defendants' for-profit salon to the general public: **"cosmetology, barbering, esthetics or skin care, makeup artistry or manicuring services…"** See Plaintiff's Complaint at Paragraph 39(b).

educational purposes, but in fact generated a profit[4] of over $500,000 per year for defendants; a

profit which was generated by charging fees for beauty salon services to the general public and

the free labor provided by Plaintiff and the class. See Plaintiffs' Complaint at Paragraphs 6 and

40-45:

> **"6. This Court has jurisdiction over the claims alleged herein because plaintiff seeks relief pursuant to the Fair Labor Standards Act ('FLSA') for the defendants' failure to pay minimum wages and/or overtime wages as required by 29 U.S.C. § 201-218 et. seq. The employment relationship alleged to exist between the parties is subject to FLSA because the defendants are properly deemed 'employers' within the meaning of the FLSA as <u>they have earned *a profit* in excess of $500,000 in yearly revenue</u> and the employment alleged <u>involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA</u>."**

\*      \*      \*

> **"40. <u>The defendants' salon personal services business is designed to generate a profit for defendants, separate and apart from the profit generated by defendants through the operation of their educational services business.</u>**
>
> **41. <u>Defendants' salon personal services business does, in fact, generate a profit for the defendants, separate and apart from the profit</u>**

---

[4] Despite the fact that Defendants argue that the terms "profit" and "for-profit" are conclusory, the complaint actually defines exactly what is meant by "profit" and "for-profit," by providing:

1) **a clear factual allegation that defendants paid no wages to Plaintiffs and her fellow workers for working at their salons (See Plaintiff's Complaint at Paragraph 44); and**

2) **a clear factual allegation that the fees charged by defendants at their salons to the general public for beauty services exceed the costs of the materials used in providing such services to the public (See Plaintiff's Complaint at Paragraph 42).**

The charging of a fee for services which exceeds the cost of the materials and labor used in providing such service is the very dictionary definition of "profit."

Moreover, Paragraph 6 of Plaintiffs' complaint clearly alleges specifically as a factual matter that Defendants **"have earned <u>a profit</u> in excess of $500,000 in yearly revenue" (emphasis added)** from the activities described in the complaint.

**generated by defendants through the operation of their educational services business.**

**42. The revenue defendants receive from the fees paid by members of the general public for salon personal services at defendants' salons exceed the value of the materials, if any, that such members of the public consume during the receipt of such services.**

**43. In operating their salon personal services business, defendants utilize the labor of the FLSA collective action members and Fed.R.Civ.P. 23 class members,** who have also purchased the educational services provided by the defendants.

**44. The FLSA collective action members and Fed.R.Civ.P. 23 class members are paid no compensation by defendants for the labor they provide in defendants' salons,** meaning **they receive no payments in United States currency or in instruments that are convertible as a matter of law into such currency in exchange for furnishing such labor.**

**45. The labor provided by the collective action members and class members in the defendants' salons was and is essential to defendants' salon personal services business, in that the labor needed to provide the salon personal services to the members of the public – for which such members of the public paid a fee to the defendants – was furnished exclusively or predominately by the members of the collective action and class members." (emphasis added)**

Plaintiff's complaint also alleges as a factual matter that Defendants are aware that they

are operating their salons on a "for-profit" basis and specifically alleges as a factual matter that

Defendants made a conscious decision to do so. See Plaintiff's Complaint at Paragraphs 55-56:

**"55. The defendants, however, have made a conscious decision to run their salon personal services business as a 'for profit' enterprise.**

**56. Defendants have made a conscious decision to charge a fee to the public for defendants' salon personal services business that exceeds the costs of the materials consumed,** so that defendants can operate a profit-making salon personal services business that competes with other enterprises that provide such salon personal services." (emphasis added)

See also Plaintiff's Complaint at Paragraph 60:

> **"60. The defendants' educational services business neither requires, nor benefits, from <u>the defendants' decision to charge members of the public a fee for providing salon personal services that is high enough to generate a profit for defendants; a profit generated by utilizing the unpaid labor of the collective action members and class members to carry out defendants' salon personal services business</u>."**

The complaint also clearly alleges as a factual matter that Defendants' for-profit salons compete with other for-profit salons in commerce, in the provision of beauty salon services to the general public. <u>See</u> Plaintiff's Complaint at Paragraphs 48-65:

> **"48. Defendants' salon personal services business competes with other profit-making businesses that provide the same salon personal services, in that members of the public have available to them other providers of such salon personal services besides the defendants' salons who, for a fee, will provide the same salon personal services.**
>
> **49. Defendants are able to advantageously compete with other profit-making businesses that provide the same salon personal services by charging members of the public lower fees for such salon services than those charged by defendants' salon competitors.**
>
> **50. Defendants' ability to provide the same salon personal services to members of the public at a lower rate than its competitors in the salon business, and earn a profit by doing so, is either substantially or entirely the result of the defendants enjoying lower operating costs because they provide such salon personal services to the public using unpaid labor by members of the collective action and class.**
>
> **51. Defendants' competitors in the salon personal services business must pay at least the minimum hourly wage required by the FLSA and Pennsylvania state law to their salon employees.**
>
> \*       \*       \*
>
> **56. Defendants have made a conscious decision to charge a fee to the public for defendants' salon personal services business that exceeds the costs of the materials consumed, so that defendants can operate a profit-making salon personal services business that competes with other enterprises that provide such salon personal services."**

**61. By carrying on a for-profit salon personal services business, utilizing the unpaid labor of the collective action/class members, defendants' actions have the effect of depressing wages and employment opportunities generally among workers who would otherwise provide those salon personal services.**

**62. That depression of wages and employment opportunities arises because the defendants are paying nothing whatsoever for the collective action/class members' labor, which defendants use to provide such salon services.**

**63. This, in turn, results in defendants being able to conduct a profit-making salon personal services business that charges members of the public less than their salon competitors must charge, because such salon competitors must pay at least the minimum hourly wage required by the FLSA and state law to their salon employees.**

**64. The ability of defendants to secure free labor for defendants' profit-making salon personal services business, without paying at least the minimum hourly wage required by the FLSA and Pennsylvania state law for that labor, results in other competing salon businesses being unable to increase the wages of their workers above that minimum hourly amount or hire more workers to provide such services.**

**65. Such other competing salon businesses are unable to do those things as a direct and proximate result of defendants' utilization of the collective action/class members' unpaid labor in defendants' salon personal services business and the defendants' ability, as a result of such utilization, to sell such salon personal services to the public for less than other competing salon businesses could charge."**

### 3.   <u>Employer/Employee Relationship Element</u>

Finally, the complaint clearly alleges facts relating to the FLSA element of an employee/

employer relationship. In addressing this element, it should be noted that the term **"employee"**

under the FLSA has been given **"the broadest definition that has ever been included in any**

**one act."** <u>Tony and Susan Alamo Foundation v. Secretary of Labor</u>, 471 U.S. 290, 299, n.21,

(1985). An **"employee"** for FLSA purposes is **"any individual employed by an employer."**

<u>See</u> 29 U.S.C. §203(g)(e). FLSA also defines **"employ"** expansively to mean to **"suffer or permit to work."** <u>See</u> <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. §203(g)). Thus, the FLSA statutory definition of **"employee"** goes far beyond common law concepts and **"stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."** <u>Id</u>.

Contrary to the assertions in Defendants' motion, Plaintiff's complaint does allege – repeatedly – there was an employer-employee relationship between herself and Defendants. Indeed, there is an entire section of Plaintiff's Complaint entitled: **"HOW THE RELEVANT FACTS ESTABLISH AN EMPLOYMENT RELATIONSHIP FOR THE PURPOSES OF THE FLSA AND PENNSYLVANIA LAW"**. <u>See</u> Plaintiff's Complaint at p. 11. The complaint also contains numerous details which establish the underlying factual basis for this allegation, and also many facts from which an employer/employee relationship can be inferred.[5]

Most obviously, there are the allegations in the complaint alleging as a factual matter that Plaintiff was *required* <u>by Defendants to perform 500 hours of labor</u> in one of Defendants' for-profit salons. <u>See</u> Plaintiffs' Complaint at Paragraph 9:

> **"9. Plaintiff Bogumila Jochim resides in Philadelphia, Pennsylvania. Like all members of the proposed collective action and class action, <u>Ms. Jochim was</u>, during the relevant time period, a student at defendants' Jean Madeline Aveda Institute in Pennsylvania and <u>was *required by* defendants</u> to perform <u>numerous hours of labor at one of defendants'</u>**

---

[5] To the extent that Defendants argue that a pleading may not rely on facts indirectly inferred from other facts pleaded, they are mistaken. Under the standard established in <u>Bell Atl. Corp. v. Twombly</u>, U.S. 544, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007), a complaint will survive the motion to dismiss if it **"contain[s] either direct <u>or inferential allegations</u> respecting all the material elements necessary to sustain recovery under some viable legal theory."** <u>See</u> also <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6, (1963)(a plaintiff need not necessarily plead a particular fact if that fact may be reasonably inferred from facts properly alleged).

15

> **for-profit beauty salons in Pennsylvania, without being paid wages."**(emphasis added)

See also Plaintiffs' Complaint at Paragraphs 66-67:

> **"66. The amount of hours of unpaid labor that the collective action/ class members performed in defendants' salon personal services business is known to the defendants, who kept detailed contemporaneous records of those hours of work.**
>
> **67. In respect to plaintiff, such hours of work were in excess of 500 hours."** (emphasis added)

Given the expansive definition of "employee" and "employ" under FLSA, it is submitted that the factual allegations in Paragraphs 9 and 67 are, by themselves, enough to raise Plaintiff's claim that she was an employee of Defendants under FLSA above the "speculative" level. Indeed, the language of Paragraph 9 specifically alleged as a factual matter that Defendants **"required"** – not permitted, not encouraged, not allowed – Plaintiff to perform labor in Defendants' for-profit salon. It is submitted that, as a general matter, only an employer may "require" a person to perform work.

Plaintiff's complaint, however, does not stop there. For example, it specifically alleges facts demonstrating that the Defendants are not charities, that the corporate defendants are for-profit entities and that the Defendants do, in fact, earn a profit of $500,000 a year from the conduct alleged. See Plaintiff's Complaint at Paragraphs 36-38:

> **"36. Defendants operate the Jean Madeline Aveda Institute as a for-profit business.**
>
> **37. Defendant Jean Madeline Educations Center of Cosmetology, Inc. d/b/a Jean Madeline Aveda Institute is registered with the State of Pennsylvania as for-profit corporations and neither are registered with, or recognized by, any State or the United States as a non-profit or charitable enterprise.**

**38. Defendants are required by law to file tax information reports or tax returns with the United States Internal Revenue Service and <u>on those filings, defendants are not indicated to be a charity or non-profit business within the meaning of the statutes and regulations that govern their obligation to file those reports or returns</u>.**" (emphasis added)

<u>See</u> <u>also</u> Plaintiff's Complaint at Paragraph 6, alleging, <u>inter alia</u>, the **"defendants are properly deemed 'employers' within the meaning of the FLSA as they have earned *a profit* in excess of *$500,000* in yearly revenue…"** (emphasis added)

The complaint also contains factual information, quoted previously, describing the type of salon business being run by Defendants and various facts describing how Defendant's for-profit salon business operates and why it is deemed to be a for-profit enterprise. <u>See</u> Plaintiff's Complaint at Paragraphs 40-45, and 48-65. The complaint also includes factual information about the type of labor being performed by Plaintiff and other class members at Defendants' salons. <u>See</u> Plaintiff's Complaint at Paragraph 39(b), describing the beauty services provided at defendants' for-profit salons as:

**"b. <u>providing of personal services to the general public</u> at several beauty salons owned by defendants in Pennsylvania (the "salon personal services business"), where members of the public pay a fee to defendants to receive *cosmetology, barbering, esthetics or skin care, makeup artistry or manicuring services*."** (emphasis added)

<u>See</u> <u>also</u> Plaintiff's Complaint at Paragraph 69(d), describing other unpaid tasks Plaintiff and the class were required to perform at Defendants' for-profit salon:

**"that the class members were required by defendants to spend some time not actually performing salon personal services on customers, but rather <u>performing manual labor or administrative functions including, but not limited to, *janitorial, clerical or logistical functions,* that were essential and necessary for the conducting of the defendants' salon personal services business, but which had no educational purpose, and for which time expenditures defendants failed and refused to pay the collective action/class members any wages whatsoever;</u>"** (emphasis added)

See also Plaintiff's Complaint at Paragraph 45, alleging as a factual matter that all of the foregoing tasks at Defendant's "for-profit" salons were performed primarily by Plaintiff and the other proposed class members:

> **"45.The labor provided by the collective action members and class members in the defendants' salons was and is essential to defendants' salon personal services business, in that the labor needed to provide the salon personal services to the members of the public – for which such members of the public paid a fee to the defendants – was furnished _exclusively or predominately by the members of the collective action and class members_." (emphasis added)**

The complaint also alleges as a factual matter that Defendants' ability to run a "for-profit" beauty salon was dependent on the free labor provided by Plaintiff and the other class members because such free labor allowed Defendants to charge less for salon services than competing salons. See Plaintiff's Complaint at Paragraphs 48-51:

> **"48. Defendants' salon personal services business competes with other profit-making businesses that provide the same salon personal services, in that members of the public have available to them other providers of such salon personal services besides the defendants' salons who, for a fee, will provide the same salon personal services.**
>
> **49. Defendants are able to advantageously compete with other profit-making businesses that provide the same salon personal services by charging members of the public lower fees for such salon services than those charged by defendants' salon competitors.**
>
> **50. Defendants' ability to provide the same salon personal services to members of the public at a lower rate than its competitors in the salon business, and earn a profit by doing so, is either substantially or entirely the result of the defendants enjoying lower operating costs because they provide such salon personal services to the public using unpaid labor by members of the collective action and class.**
>
> **51. Defendants' competitors in the salon personal services business must pay at least the minimum hourly wage required by the FLSA and Pennsylvania state law to their salon employees."**

Additional facts supporting the allegation of an employer-employee relationship can be also be found, <u>inter alia</u>, in Paragraphs 68 and 69 of Plaintiff's Complaint:

> **68. The relationship between the defendants and the putative collective action members and class members, in respect to the labor provided by the putative collective action and class members in the defendants' salon personal services business, is one of employer and employee for the purposes of the FLSA and Pennsylvania state law.**

> **69. That employment relationship exists for the following reasons:**

> > **a. The collective action members and class members provided labor in defendants' salon personal services business that was immediately advantageous to defendants and the profitability of such business was substantially or wholly dependent upon such labor;**

> > **b. The collective action members and class members, while receiving a benefit from their labor in the defendants' salon personal services business in the form of experience, were simultaneously conferring an additional and valuable economic benefit – beyond the tuition they paid for training – upon the defendants, because defendants were charging the public fees for the salon personal services performed by the collective action/class members which were high enough to generate a profit for defendants;**

> > **c. The labor provided by the collective action/class members in defendants' salon personal services business displaced or made unnecessary the employment of the persons the defendants would have otherwise had to employ, and pay wages to, for the performance of the labor that the collective action/class members furnished and from which the defendants profited;**

> > **d. Certain types of labor performed by the collective action/class members did not, and could not, confer any educational or occupational benefit whatsoever upon such collective action/class members, <u>in that the class members were required by defendants to spend some time not actually performing salon personal services on customers, but rather performing manual labor or administrative functions including, but not limited to, janitorial, clerical or logistical functions</u>, that were essential and necessary for the conducting of the defendants' salon personal services business, but which had no educational purpose, <u>and</u>**

> **for which time expenditures defendants failed and refused to pay the collective action/class members any wages whatsoever; and**
>
> e. **Defendants' utilization of the unpaid labor of collective action/class members in a commercial, for-profit, salon personal services business depresses the wages of employees in that industry and lessens the employment opportunities in that industry." (emphasis added)**

From the foregoing, it is clear that Plaintiff's complaint alleges more than enough facts relating to the three elements of a FLSA wage claim to raise her claim above the level of mere "speculation." Indeed, it is clear that Plaintiff's complaint for unpaid wages under FLSA contains a great deal more factual detail than was present in other FLSA complaints which have survived a challenge under Twombly. See e.g. Burroughs v. MGC Servs., 2009 U.S. Dist. LEXIS 29700 (W.D. Pa. Apr. 7, 2009) (denying motion to dismiss FLSA and Pa MWA claims where defendants alleged the complaint lacked the factual specificity required by Twombly).[6]

## II. PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS A WAGE CLAIM UNDER PENNSYLVANIA STATE LAW

Plaintiff's complaint sets forth claims under both the Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1 et seq. ("Pennsylvania WPCL") and the Pennsylvania Minimum Wage Act, 43 P.S. §333.101 et seq. ("Pennsylvania MWA"). See Counts II and III, respectively. Defendant's primary argument with regard to Plaintiffs' Pennsylvania state law wage claims seems to be that Plaintiff fails to allege an express contract between herself and Defendants.

While it is true that a claim under the Pennsylvania WPCL requires a contract of employment, claims under the Pennsylvania MWA **do not** require any contract. See Xavier v.

---

[6] For the convenience of the Court, Plaintiff has attached hereto, as Attachment A, a copy of the complaint in Burroughs. Comparing the level of factual detail in the six page Burroughs complaint with the nineteen page complaint filed by Plaintiff in the case at bar, it is clear that Plaintiff's pleading provides far greater detail.

Belfor United States Group, Inc., 2009 U.S. Dist. LEXIS 11751 (E.D. La. Feb. 13, 2009) at *25, denying a motion to dismiss unpaid minimum wage claims under Pennsylvania law, where defendant argued that the plaintiff failed to allege a "contract of employment" as required by Pennsylvania's WPCL, noting that defendant's argument ignored the plaintiffs' parallel claim for unpaid minimum wages under the Pennsylvania MWA (which has no "contract" requirement), stating:

> **"Belfor argues that Plaintiffs fail to state a claim under Pennsylvania's Wage Payment and Collection Law ('WPCL') because that law requires a wage and hour contract between the claimant and the alleged employer. Belfor contends that Plaintiffs undisputedly did not have a contract of employment with Belfor and that they did not allege such in the Complaint. In opposition, Plaintiffs suggest that their claim is actually brought under Pennsylvania's Minimum Wage Act, Pa. Stat. Ann. tit. 43, § 333.104, which contains its own civil action enforcement provision in Pa. Stat. Ann. tit. 43, § 333.113."**

See also Scott v. Bimbo Bakeries, Inc., 2012 U.S. Dist. LEXIS 26106 (E.D. Pa. Feb. 29, 2012) at *13-16 (granting a motion to dismiss a Pennsylvania WPCL claim because of the failure to plead the existence of a contract, but denying a motion to dismiss a Pennsylvania MWA claim for failure to pay the minimum wage because the MWA has no such contract requirement).

As was held by the Eastern District of Pennsylvania in Scott v. Bimbo Bakeries, Inc., 2012 U.S. Dist. LEXIS 26106 (E.D. Pa. Feb. 29, 2012) at *13, the pleading requirements for a valid FLSA minimum wage and Pennsylvania MWA claim are **"substantively indistinguishable"** from each other. Thus, if one has adequately pleaded a FLSA minimum wage claim, one has also pleaded an adequate claim for unpaid minimum wages under the Pennsylvania MWA. See Scott v. Bimbo Bakeries, Inc., 2012 U.S. Dist. LEXIS 26106 (E.D. Pa. Feb. 29, 2012) at *13, stating: **"Because Plaintiffs have pled a plausible FLSA claim, we**

conclude that they have also pled a plausible PMWA claim." Accordingly, because Plaintiff has adequately pleaded her FLSA minimum wage claim, she has also pleaded a proper claim for unpaid wages under the Pennsylvania MWA. Thus, Count III of Plaintiff's complaint should not be dismissed.

## III. PLAINTIFF HAS ADEQUATELY PLEADED A CLAIM AGAINST INDIVIDUAL DEFENDANT SAMUEL LEHMAN

Defendants' arguments regarding dismissal of the FLSA and Pennsylvania MWA claims against Defendant Samuel Lehman are misplaced. Plaintiff's complaint adequately pleads a claim against this defendant.

Under FLSA, an "'**Employer' includes any person acting directly _or indirectly_ in the interest of an employer in relation to an employee.**" (emphasis added) 29 U.S.C. § 203(d). This "**definition . . . is 'expansive,' and an employee may have more than one 'employer.'**" Zegarra v. Marco Polo, Inc., 2009 U.S. Dist. LEXIS 3845, *5 (E.D. Va. Jan. 21, 2009). Indeed, the United Supreme Court itself has held that the term "employer" is to be construed expansively to fulfill the remedial goals of the Act, and that FLSA contemplates that more than one employer may be responsible for violations under FLSA. See Falk v. Brennan, 414 U.S. 190, 195 (1973). Under FLSA, "**courts have routinely held that officers and managers are employers within the meaning of the [FLSA].**" Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance & Practice (West 2000) at §3:33. Indeed, the "**practical effect**" of the FLSA's expansive definition of employer "**is that in almost every case at least one individual can be found to be an employer within the meaning of the FLSA.**" Id. at § 3:31.

FLSA case law is replete with examples of individual defendant supervisors, owners, and officers who created or participated in unlawful wage policies and were found personally liable

22

under FLSA. See Luder v. Endicott, 253 F.3d 1020, 1022 (7th Cir. 2001) (**"the supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA is liable for the violation"**); United States Dept. of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir.1995) (finding individual defendant liable under the FLSA where he had power over hiring, firing, rates of pay, schedule and payroll); Reich v. Circle C. Investments, Inc., 998 F.2d 324, 329 (5th Cir.1993):

> **"This court has held that the FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act on behalf of the corporation vis-a-vis its employees."**

See also Dole v. Solid Waste Servs., Inc., 733 F.Supp. 895, 923 (E.D.Pa.1989), aff'd mem., 897 F.2d 521 (3d Cir.), cert. denied, 497 U.S. 1024 (1990):

> **"The overwhelming weight of authority is that a corporate officer with operational control of a corporation is an employer along with the corporation, jointly and severally liable under the [FLSA] for unpaid wages."**

In Defendants' motion, Defendants once again exaggerate the degree of factual specificity which a FLSA claim requires in order to satisfy Twombly; this time in the context of a FLSA claim against an individual defendant. In actuality, courts addressing such FLSA claims have required far less factual detail than Defendants demand. See Sanchez v. Haltz Constr., Inc., 2012 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 4, 2012) at *12, rejecting the argument that Twombly required greater specificity as to facts for a FLSA claim against corporate officers, owners and controllers of the corporate defendant, stating:

> **"Defendants also argue that plaintiffs have not adequately alleged that the defendants were their 'employers' as the statute defines that term. We disagree.... Plaintiffs allege that Selvaggio and Dillon were officers**

**and owners of Haltz who controlled the company's day-to-day operations. (Id. at ¶¶ 18-20.) It is reasonable to infer that the plaintiffs, laborers who performed masonry work on the project, were employed by Haltz. And Selvaggio's and Dillon's control over Haltz makes them potentially liable as employers, too. Ultimately, plaintiffs must prove their allegations as to each defendant, but they are not required to do so at this stage of the case.**" (emphasis added)(citation omitted)

Indeed, in <u>Burroughs v. MGC Servs.</u>, 2009 U.S. Dist. LEXIS 29700 (W.D. Pa. Apr. 7, 2009), the defense made essentially the same argument as the Defendants make in the case at bar. The <u>Burroughs</u> defendants moved to dismiss individual liability claims against the owner of the corporate defendant, based on <u>Twombly</u>, arguing there were insufficient factual details in the complaint to support a claim for individual liability under FLSA and the Pennsylvania Minimum Wage Act. It is clear that, with regard to factual specificity relating to the individual defendant, the <u>Burroughs complaint had far less factual specificity than the complaint in the case at bar</u>. <u>See</u> Attachment A, <u>Burroughs</u> Complaint. Specifically, the <u>Burroughs</u> Complaint alleged at Paragraph 7 that [the individual defendant] was the **"principal owner of MGC"** and **"personally oversees and manages MGC."** <u>Id</u>. The <u>Burroughs</u> Complaint further alleged at Paragraph 7 that the individual defendant **"acted directly in the interest of the MGC in relation to Plaintiff and was personally involved in the illegal practices alleged [in the Complaint]."** <u>Id</u>. Based on these allegations, Judge Standish denied the motion to dismiss the individual FLSA and Pennsylvania MWA claims against the individual defendant in <u>Burroughs</u>, finding that these alleged facts were sufficient under <u>Twombly</u>. <u>See Burroughs v. MGC Servs.</u>, 2009 U.S. Dist. LEXIS 29700 (W.D. Pa. Apr. 7, 2009) at *14-15.

In the case at bar, Plaintiff's complaint provides greater factual specificity regarding the conduct of Defendant Samuel Lehman than was provided for the FLSA claims against the

individual defendant in <u>Burroughs</u> and the other cases cited herein. For example, Plaintiff's complaint not only alleges as a factual matter that Defendant Lehman personally participated in the unlawful labor policy at issue, but also alleges specifically that <u>he personally created the unlawful policy at issue, that he ordered it to be implemented and that he personally received the proceeds of that unlawful policy</u>. <u>See</u> Plaintiff's Complaint at Paragraphs 12-14:

> **12. Defendant Samuel Lehman is the managing officer, owner and principal of Jean Madeline Aveda Institute <u>who *created* the policies and procedures described herein</u>.**
>
> **13. No claims in this action are based on any theory of vicarious liability and no claims are based solely on the status of Defendant Samuel Lehman as corporate officer, manager or owner.**
>
> **14. Rather, <u>the claims against Defendant Samuel Lehman are based on the actions of Samuel Lehman, and on the fact that Samuel Lehman personally participated in the unlawful practices alleged herein; *that Samuel Lehman knew of, created and approved of the practices alleged herein; and that Samuel Lehman shared in the proceeds of the unlawful practices alleged herein*</u>.** (emphasis added)

It is clear from the case law cited above that the factual allegation that an individual defendant supervisor/owner personally created an unlawful policy of failing to pay workers the legally required wage, and personally received the profits earned thereby, is – by itself – more than enough to state a claim of individual liability under FLSA. Plaintiff's complaint, however, does not stop there and provides numerous additional factual allegations relating to Mr. Lehman's FLSA liability. <u>See</u> Plaintiff's Complaint at Paragraphs 74-85:

> **74. Rather, Defendant <u>Samuel Lehman *created and directed*</u> the practices which created an employer and employee relationship with members of the collective action and class.**

25

**75.** Defendant <u>Samuel Lehman also *directed*</u> that Jean Madeline Aveda Institute and the other defendants would:

    a.  operate for-profit salons, charging members of the public more than the costs of the materials consumed for salon personal services; and

    b.  not pay wages to members of the collective action and class for the labor they were required to perform at these for-profit salons.

*       *       *

**77.** <u>Defendant Samuel Lehman became aware</u>, at least three years prior to the commencement of this action, that the salon personal services business of the defendants was an important and profitable business activity of the Jean Madeline Aveda Institute which generated a profit for defendants which was separate and apart from the tuition collected by defendants in their educational services business.

**78.** <u>Defendant Samuel Lehman became aware,</u> at least three years prior to the commencement of this action, that the salon personal services business of defendants relied upon the unpaid labor provided by the collective action/class members to generate such a profit for defendants.

**79.** Indeed, the business model of defendants' salon personal services business is to capitalize on the free labor provided by Jean Madeline Institute students by allowing defendants to undercut their salon competitors' prices in the salon personal services business.

**80.** <u>Even after becoming aware of such facts, Defendant Samuel Lehman made no attempt to ascertain whether the defendants' use of unpaid labor in their salon personal services business was in compliance with the FLSA or the Pennsylvania state minimum wage laws</u>.

*       *       *

**82.** Despite this, <u>Defendant Samuel Lehman made no attempt to change the defendants' practice of using uncompensated student labor in a profit-making salon personal services business</u>.

**83.** In light of the foregoing set of facts, Defendant Samuel Lehman can properly be deemed an 'employer' or co-employer of plaintiff and the members of the collective action and class action within the meaning of

26

the FLSA and Pennsylvania state law, in that Defendant <u>Samuel Lehman</u> <u>was acting as a decision making 'agent of an employer,' was the</u> <u>controlling person of the Jean Madeline Aveda Institute, and the</u> <u>beneficial owner of same</u>, with the power to implement, continue and/or terminate the illegal policies and practices that are alleged herein."

\*    \*    \*

85. The imposition of such liability upon <u>Defendant Samuel Lehman is</u> <u>also proper because he expressly directed agents, officers and employees</u> <u>of the other defendants to commit the acts that violated the FLSA and</u> <u>Pennsylvania state law</u>, and as a result, should be held civilly liable for such violations of law." (emphasis added)

Under the case law cited above, these factual allegations are more than sufficient to state

valid FLSA and Pennsylvania MWA[7] claims against Defendant Samuel Lehman at the pleading stage.

## IV.    DEFENDANTS' ARGUMENT THAT PLAINTIFF'S COMPLAINT DOES NOT ADEQUATELY DISTINGUISH BETWEEN THE TWO CORPORATE DEFENDANTS AT THE PLEADING STAGE IS MISPLACED

An "employer" subject to the FLSA is **"any person acting directly <u>or indirectly in the</u>**

**<u>interest of an employer</u> in relation to an employee . . . ."** (emphasis added) 29 U.S.C. §

203(d). The United Supreme Court itself has held that the term "employer" is to be construed

expansively to fulfill the remedial goals of the Act, and <u>that FLSA contemplates that more</u>

---

[7] The Pennsylvania MWA defines "employer" in terms substantially similar to those in FLSA. <u>See</u> 43 Pa. Cons. Stat. §333.103: "*<u>any individual</u>*, **partnership, association, corporation, business trust, or any** **person or group of persons acting, directly *<u>or indirectly, in the interest of an employer</u>* in relation to** **any employe[e]." (emphasis added)** Thus, the allegations needed to establish individual liability under FLSA are also sufficient to state a claim for individual liability under the Pennsylvania MWA. <u>See</u> Burroughs v. MGC Servs., 2009 U.S. Dist. LEXIS 29700 (W.D. Pa. Apr. 7, 2009), denying a motion to dismiss a claim for individual liability under the Pennsylvania MWA, based on an alleged lack of pleading detail, where the complaint alleged the individual defendant:

> **"personally oversees and manages [Defendant] MGC. During all times** **relevant to this lawsuit, [individual defendant] acted directly in the interest of** **the MGC in relation to Plaintiff and was personally involved in the illegal** **practices alleged herein exercised supervisory control over employment** **policies."**

**than one employer may be responsible for violations under FLSA**. See Falk v. Brennan, 414

U.S. 190, 195 (1973). Thus, liability for violating an employee's rights under FLSA has attached

to a parent corporation or holding company for the acts of a subsidiary when the parent

substantially controls the terms and conditions of employment at its subsidiary. See Falk v.

Brennan, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973); Lehman v. Legg Mason,

Inc., 532 F.Supp.2d 726, 733 (M.D.Pa. 2007).

Plaintiff's complaint names two corporate defendants as her co-employers: Jean

Madeline Education Center of Cosmetology, Inc. and Jean Madeline, Inc. Both of these entities

use the "business name" of "Jean Madeline Aveda Institute" and held themselves out to Plaintiff

and the world as "Jean Madeline Aveda Institute." Plaintiff's complaint admittedly does not

contain a great deal of detail as to the differences between two corporate entities for the simple

reason that, prior to instituting this lawsuit, Plaintiff did not even know there were two corporate

entities. Rather, at the current time, Plaintiff knows only that she was employed by an entity

which described itself to her as "Jean Madeline Aveda Institute," a "d/b/a" which both of these

corporate entities use. Thus, without discovery, Plaintiff cannot be more specific as to the

differences between these two corporate entities. It is submitted that it would be unfair to

penalize Plaintiff in these circumstances, since it was these two corporate defendants – not

Plaintiff – who chose to use the same "d/b/a" and who failed to identify themselves to Plaintiff

by their actual corporate names.

This situation is not uncommon. The case law is filled with examples – after Twombly –

where a complaint was upheld which referred to parent/subsidiary/holding companies

collectively as "defendants" in the initial pleading because, without discovery, the plaintiff

lacked the information to differentiate between them at the pleading stage. See e.g. Lehman v.

Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007), denying a motion to dismiss where

the complaint alleged that both subsidiary and holding company were plaintiff's employers, and

allowing discovery to obtain more detailed information about the relationship between plaintiff

and each entity, stating:

> "LMI is and has always been 'a 'holding company' whose sole business
> is the ownership of various subsidiary corporations, one of which was
> LMWW. (Id. at 5.)…LMI further argues that because Plaintiff did not
> articulate facts in his amended complaint that allege regular control by
> LMI over the terms and conditions of his employment, all FLSA claims
> against LMI should be dismissed….The amended complaint contains
> the following allegation: 'At all relevant times, Defendant employed,
> and/or continues to employ, Plaintiff and each member of the
> Nationwide Collective Class within the meaning of the FLSA.' (Doc. 13
> PP 52-53.) 'Defendant' means 'all defendants' in this matter. (Id. P 4.)
> Thus, on the face of the complaint, Plaintiff has fairly and adequately
> alleged that Defendant LMI was his 'employer' under the relevant
> statutory definitions. Limited discovery is necessary to resolve this
> issue, as anticipated by the parties' joint case management plan filed on
> August 23, 2007. (Doc. 44 P 6.200.) LMI's motion to dismiss will be
> denied on this ground." (emphasis added)

See also Tahir v. Avis Budget Group, Inc., 2009 U.S. Dist. LEXIS 115879, 27-28 (D.N.J. Dec.
14, 2009):

> "The Court must at this stage of litigation, however, take as true all
> factual allegations pleaded in the Complaint. Plaintiff has alleged in the
> Complaint that he was employed by 'Defendants' - which includes
> Defendant Avis Group…. In light of the constraints of a Rule 12(b)(6)
> review and of the broad definition of 'employer' under FLSA, the
> Court will deny Defendants' motion to dismiss the claims against Avis
> Group. The denial, however, will be without prejudice, and Defendants
> may ask the Court to re-visit the issue of whether Avis Group is
> Plaintiff's employer within the meaning of FLSA on a motion for
> summary judgment."

As in the cases cited above, Plaintiff alleges that she was employed by all defendants and

has provided factual allegations relating to the actions taken by Defendants collectively, (as well

as certain actions taken individually by Defendant Samuel Lehman, as described in Section IV,

supra). FLSA specifically supports the theory that an employee may have more than one "employer." At the pleading stage, Plaintiff submits she has adequately pleaded that both corporate defendants were her "employers" within the meaning of FLSA.

## V. DEFENDANTS' REQUEST THAT THE COMPLAINT BE DISMISSED "WITH PREJUDICE" IS CONTRARY TO THIRD CIRCUIT LAW AND WITHOUT MERIT

Defendant's motion seeks dismissal **with prejudice**. Even if Defendants were correct that Plaintiff's complaint lacks the factual specificity to adequately plead FLSA and Pennsylvania state law wage claims – a contention which Plaintiff strongly disputes for the reasons set forth previously – it is black letter law in the Third Circuit that a dismissal for lack of specificity is **without prejudice** and that the proper remedy is to give a plaintiff the opportunity to amend the pleading to provide greater specificity. See Ross v. Meagan, 638 F.2d 646, 650 (3d Cir. Pa. 1981):

> **"We also have held consistently, however, that failure to permit amendment of a complaint dismissed for want of specific allegations constitutes an abuse of discretion. We conclude that the district court's refusal to permit amendment, considered in the light of accepted legal principles and all the relevant circumstances, was an abuse of discretion." (emphasis added) (citations omitted)**

See also Dist. Council 47, AFSCME v. Bradley, 795 F.2d 310, 316 (3d Cir. Pa. 1986):

> **"the district court at the least should have granted the plaintiffs leave to amend their complaint to provide sufficient specific factual allegations to demonstrate a causal nexus between the defendants' actions and the alleged violations of constitutional rights." (emphasis added)**

Indeed, in the Third Circuit, a plaintiff whose complaint is found to lack the required specificity must be offered the opportunity to cure the defect by amendment, even if the plaintiff has not requested the opportunity to amend. See Phillips v. County. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008):

"the District Judge erred when he dismissed the complaint without offering Phillips the opportunity to amend her complaint. It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." (emphasis added)

See also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002).

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."

In the case at bar, Plaintiff strongly believes that her current complaint more than adequately sets forth valid claims for unpaid wages against Defendants under both the FLSA and the Pennsylvania Minimum Wage Act. If the Court believes otherwise, however, Plaintiff is more than willing to file an amended pleading with as much additional factual detail as the Court deems appropriate.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss should be denied.

DeNITTIS OSEFCHEN, P.C.

BY: _Stephen P. DeNittis_____
Stephen P. DeNittis, Esq. (SPD00016)
Joseph A. Osefchen, Esq. (JO5472)
Shane T. Prince, Esq. (STP0947)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Phone: (856) 797-9951
Fax: (856) 797-9978

Dated: February 12, 2014

Attorneys for Plaintiff

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENE L. BURROUGHS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | FILED ELECTRONICALLY |
| v. | : | ON DECEMBER 8, 2008 |
| | : | |
| MGC SERVICES, INC. and GRETCHEN | : | JURY TRIAL DEMANDED |
| GEIBEL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiff Rene L. Burroughs ("Plaintiff") brings this lawsuit against Defendants MGC

Services, Inc. and Gretchen Geibel ("Defendants"), seeking all available relief under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act

("PMWA"), 43 P.S. §§ 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection

Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.* The following allegations are based on personal

knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of

others.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and

28 U.S.C. § 1331.

2.      Jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. § 1367.

3.      Venue in this Court is proper under 28 U.S.C. § 1391.

## THE RELEVANT TIME PERIOD

4.      The FLSA and PMWA permit Plaintiff to recover unpaid wages and liquidated damages for up to three years prior to the filing of this lawsuit.  Accordingly, the allegations set forth herein concern Plaintiff's employment since December 8, 2005.

## PARTIES

5.      Plaintiff is an individual residing in Sharpsville, Pennsylvania (Mercer County) and, during the relevant time period, she was jointly employed by Defendants MGC Services, Inc. and Gretchen Geibel.

6.      Defendant MGC Services, Inc. ("MGC") is a corporate entity maintaining a principal place of business in West Middlesex, Pennsylvania (Mercer County).  MGC provides various services to children with mental health issues.

7.      Defendant Gretchen Geibel ("Geibel") resides within this judicial district and, upon information and belief, is the principal owner of MGC.  Geibel personally oversees and manages MGC.  During all times relevant to this lawsuit, Geibel acted directly in the interest of the MGC in relation to Plaintiff and was personally involved in the illegal practices alleged herein.

8.      Throughout this complaint, MGC and Geibel are referred to collectively as "Defendants."

9.      Defendants employ individuals, including Plaintiff, engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person.

10.     Defendants' annual gross volume of business done exceeds $500,000 (exclusive of excise taxes at the retail level which are separately stated).

2

## FACTS

11.     Plaintiff was jointly employed by Defendants during all relevant times prior to approximately August 2008 as a Therapeutic Staff Support worker. As such, Plaintiff provided one-on-one support to children or adolescent clients who suffered from mental health problems. Defendants received funding for the provision of such client services through various governmental contracts and grants.

12.     Plaintiff was paid an hourly wage and was not exempt from the mandates of the FLSA, the PMWA, or the PWPCL.

13.     As a Therapeutic Staff Support worker, Plaintiff regularly performed various activities that were essential to her job and undertaken for the sole benefit of Defendants' business operations. These activities included, *inter alia*, preparing and reviewing detailed reports and paperwork concerning Plaintiff's clients and client activities and traveling during the workday between different client locations.

14.     Defendants failed to provide Plaintiff with any compensation for the time spent performing the activities described in Paragraph 13 above. Such uncompensated time totaled hundreds of hours during the relevant time period and frequently was performed in excess of 40 hours per workweek.

15.     In failing to compensate Plaintiff for all hours worked and failing to pay Plaintiff the legally mandated overtime premium when such hours exceeded 40 during the workweek, Defendants acted willfully and with reckless disregard of clearly applicable FLSA and PMWA provisions.

## COUNT I
### (Alleging Violations of the FLSA)

16.     All previous paragraphs are incorporated as though fully set forth herein.

17.     Plaintiff was an employee entitled to the FLSA's protections.

18.     Defendants is an employer covered by the FLSA.

19.     The FLSA entitles employees to compensation for every hour worked in a workweek. *See* 29 U.S.C. § 206(b).

20.     The FLSA entitles employees to overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

21.     Defendants violated the FLSA by failing to compensate Plaintiff the legally mandated overtime premium and by failing to pay Plaintiff for all hours worked.

22.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT II**
**(Alleging Violations of the PMWA)**

23.     All previous paragraphs are incorporated as though fully set forth herein.

24.     Plaintiff was an employee entitled to the PMWA's protections.

25.     Defendants is an employer covered by the PMWA.

26.     The PMWA entitles employees to compensation for every hour worked in a workweek. *See* 43 P.S. § 333.104(a).

27.     The PMWA entitles employees to overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

28.     Defendants violated the PMWA by failing to compensate Plaintiff the legally mandated overtime premium and by failing to pay Plaintiff for all hours worked.

29.     In violating the PMWA, Defendants acted willfully and with reckless disregard of clearly applicable PMWA provisions.

## COUNT III

### (Alleging Violations of the PWPCL)

30.     All previous paragraphs are incorporated as though fully set forth herein.

31.     The PWPCL requires that covered employees be compensated for every hour worked in a workweek. *See* 43 P.S. § 260.3.

32.     Defendants are employers covered by the PWPCL, and Plaintiff is an employee entitled to the law's protections.

33.     Defendants have violated the PWPCL by failing to compensate Plaintiff for all hours worked.

34.     In violating the PWPCL, Defendants have acted willfully and with reckless disregard of clearly applicable PWPCL provisions.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A.     Compensatory and back pay damages to the fullest extent permitted under federal and state law;

B.     Liquidated damages and monetary penalties to the fullest extent permitted under federal and state law;

C.     Litigation costs, expenses, and attorney's fees to the fullest extent permitted under federal and state law; and

D.    Such other and further relief as this Court deems just and proper.


Date:  December 8, 2008                              /s/ Peter Winebrake
                                                     Peter Winebrake (80496)
                                                     THE WINEBRAKE LAW FIRM, LLC
                                                     Twining Office Center, Suite 114
                                                     715 Twining Road
                                                     Dresher, PA 19025
                                                     Phone:  (215) 884-2491
                                                     pwinebrake@winebrakelaw.com